UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JERALD GIPSON,
DC #B00406
Plaintiff,

Case No. 3:16-cv-236- MMH-MCR

v.

SERGEANT MARKHAM, et al.
Defendants.
_________________________/

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Markham, Fogell, Perry, hereinafter ("the Defendants"), through undersigned counsel, hereby counsel submits this Motion for Summary Judgment pursuant to Rule 56, Federal Rules of Civil Procedure and state as follows:

1.) Plaintiff failed to exhaust his administrative remedies against defendants.
2.) Plaintiff fails to state a claim for relief;
3.) The Defendants are entitled to Eleventh Amendment Immunity

STATEMENT OF FACTS

1. At the times alleged in the Second Amended Complaint (Doc. 59), Plaintiff Jerald Gipson ("Gipson," or "Plaintiff") was in the custody of the Florida Department of Corrections ("Department" or "FDOC") incarcerated at Suwannee Correctional Institution ("CI") (Id. at 9.)

2. Gipson brings this action pursuant to 42 U.S.C. § 1983, alleging his constitutional rights were violated. (Doc. 59 at 14 §V.) Plaintiff filed his Initial Complaint on March 10, 2016. (Doc. 1). In his Fifth Amendment Complaint, Plaintiff alleges that his First Amendment right was violated by retaliation, Eighth Amendment right due to use of excessive force, failure to protect, verbal threats and sexual harassment (Doc. 59 at 14 §V).

3. Plaintiff alleges that on November 19, 2013, Defendant Perry came to his cell during his security checks and use sexual words with him. (Doc. 59 at 15 ¶5). Plaintiff claims that on November 20, 2013, Defendants Markham and Fogell came to 3H-Dorm to conduct showers for high security inmates around 11:40 a.m. and 11:50 a.m. (Id. ¶6). Plaintiff states that he saw Defendant Perry and asked Defendants Markham and Fogell to place him back into the shower, but they would not. (Id.). Defendant Perry threatened to beat Plaintiff to sleep while Plaintiff was in the shower trying off.

4. Plaintiff alleges that minutes later Defendant Perry asked him why he wrote a grievance on him to the inspector for sexual harassment. (Id. at ¶7) Plaintiff was then told to cuff up and taken to his cell. (Id.)

5. Plaintiff alleges that while he was being escorted with a dog leash, Defendant Perry jacked up his arm where there is a metal food flap. (Id. at ¶ 8) Plaintiff alleged that the door was closed to his cell and Defendants Perry, Markham and Fogell snatched the dog leash and slammed Plaintiff's arm in the metal food flap. (Id.)

6. Plaintiff claims that 30 minutes later Defendant Perry came to his cell and told him to cuff up or it will be worse, while Defendant Pittman[1] and Bryant were present. (Id. at ¶10)

7. Plaintiff alleges that he submitted to cuffs and was placed in full body restraints. (Id. at ¶12) Defendant Perry escorted Plaintiff out of the quad, lifted Plaintiff off his feet, and threw him towards the group room window in the sally part hallway to the floor. (Id.) Defendant Perry repeatedly punched Plaintiff in the face to the point that he blacked out while Defendant Perry continued to beat him. (Id.)

8. Defendant Perry broke Plaintiff's jaw. (Id.) Plaintiff was taken to Jacksonville Memorial Hospital to have jaw surgery. (Id. p 19, ¶ ¶17-18)

9. Plaintiff was given a DR for failure to follow a verbal order. (Id. p 19, ¶¶19). Plaintiff alleges that he could not have exhausted his administrative at Suwannee because he was in a death zone. (Id. p 7, §II). Plaintiff also alleges that his grievances filed in November 2013, at Suwannee CI were thrown away. (Id. p 20, ¶23). Plaintiff alleges that he was transferred to Union CI, where he filed a grievance that was approved by the warden. (Id.)

10. Plaintiff states that the injuries from the first use of force were "harm in Plaintiff's right and left arms, forearms, injuries of nerves results with no feeling, pain after for a period of time after the incident." (first use of force). (Doc. 59, p 20 ¶ 26). As a result of the alleged second use of force, Plaintiff alleges he suffered a broken jaw and hurt knee. (Id).

[1] Defendants Pittman and Bryant have not been served. The mentioning of their names is this motion is in no way meant to waive their rights to service of process. Defendants are merely reciting Plaintiff's allegations regarding the unserved Defendants in relationship to the Defendants that have been served.

11. Plaintiff is suing Defendants in their official capacities. (Doc. 59, p 20, ¶26)

12. Gipson seeks declaratory judgment, compensatory, punitive and nominal damages against each Defendant. Plaintiff also seeks to be appointed counsel and attorney fees. (Doc. 59 at 24).

DEFENDANTS' STATE OF MATERIAL AND GENUINE FACTS

1. On November 20, 2013 at approximately 11:52 AM, while assigned as H-Dormitory Housing Officer, Plaintiff was being escorted in wrist restraints. [Exs. A, Deposition of Defendant Perry, F, Use of force report from 11/20/13]. Plaintiff attempted to pull the handcuffs into his cell, while stating that he was going to kill himself by jumping off of the sink, head first with his cuffs applied. [Id.]

2. Defendant Perry gave several verbal orders to Plaintiff to stop physically resisting and attempting to pull the handcuffs into the cell, while continuing to maintain his hold on the rip tether, which was attached to Plaintiff. [Id.] Plaintiff reluctantly complied with all orders given. [Id.] Due to Plaintiff's statements of self-harm, Plaintiff was restrained and the staff maintained a hold on the rip tether attached to the handcuffs. [Id.] The door was cycled open an Plaintiff was escorted off the wing. [Id.]

3. While escorting Plaintiff off the wing, and awaiting the arrival of the hand-held camera, Plaintiff became physically resistant while in the sally port between wings 3 and 4 and attempted to break Defendant Perry's custodial hold by snatching away from him [Id.]

4. Defendant Perry ordered Plaintiff several times to cease his actions to no avail. [Id.] In response, the utilization of reactionary physical force became necessary. [Id.] Defendant Perry placed Plaintiff chest first against the H-dormitory wall of the group room of Quad 3 vestibule to pin Plaintiff to the wall to overcome his physical resistance to all orders. [Id.] Defendant Perry was unable to maintain his hold on Plaintiff while he continued his aggressive behavior. [Id.] Defendant Perry placed Plaintiff chest down on the floor, utilizing his body weight to subdue him. [Id.] Officer Russell arrived and assisted Defendant Perry in pinning Plaintiff's legs to prevent him from kicking at staff. [Id.] Once Inmate Gipson became compliant with all orders given, all force ceased.

5. Inmate Gipson was placed in secure cell H3-112, fully restrained until he could be removed from the cell to be evaluated for his declaration of a psychological emergency. [Id.]

6. At the time Plaintiff made no allegations of staff abuse. [Ex. F, use of force report, G MINS Report.].

7. Defendants Markham and Fogell were not involved in the use of force. [Exs. A, B, Deposition of Defendant Fogell, C, Deposition of Defendant Markham, F, G, Mins report from use of force 11/20/13, N, Training document]. Defendant Fogell and Defendant J.

Pittman witnessed the use of force. [Exs. A, B, F,G]. Defendant Markham was not present because he was in training. [ Ex. C, N]

8. Plaintiff was given a disciplinary report for a violation of Fla. Admin. Code R. (6-1) disobeying a verbal or written order, for which he was pled no contest and was sentenced to 30 days disciplinary confinement. [Ex. H, Disciplinary Report]

9. Plaintiff's injuries included a laceration to his right lower mandibular palette and an abraised area to the right wrist. [Ex. K, Plaintiff Medical Records]

10. Plaintiff was involved in another use of force incident wherein Defendants Markham, Fogell, and Perry were involved, which is not before this Court. [See Exs. I., Use of Force from 9/8/23; J MINS Report from 9/8/23]. This incident occurred on September 8, 2013, but Plaintiff has confused the incidents, and has not exhausted his administrative remedies regarding this incident either.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.

2d 1328, 1330 (11th Cir. 1988.) As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

Summary judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment bears the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 323. Upon meeting this burden, the burden shifts to the nonmoving party to present evidentiary material demonstrating that a genuine issue of material fact exists. Id. at 324. Applicable substantive law identifies those facts that are "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Factual issues must have a real basis in the record to be considered genuine and the nonmoving party must show more than a "metaphysical doubt" regarding the material facts. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

Although all reasonable inferences are made in favor of the nonmoving party, a court need not permit a case to go to a jury when the inferences drawn from the evidence and upon which the nonmoving party relies are "implausible." Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U. S. 372, 380 (2007). The nonmoving party's evidentiary material must consist of more than their self-serving or conclusory sworn statements to create an issue of fact for trial. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.1991). A mere "scintilla" of evidence in support of the nonmoving party's position is not sufficient; there must be evidence upon which a jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252; see also Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . .").

The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785-86 (11th Cir. 2005.) The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Moreover, "the nonmoving party cannot create a genuine issue

of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" Vega v. Invsco Group, Ltd., 432 F. App'x 867, 869-70 (11th Cir. 2011).

Specifically, in civil actions filed by inmates, federal courts:

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

Beard v. Banks, 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. See, e.g., Waddell v. Valley Forge Dental Associates, Inc., 276 F.3d 1275, 1279 (11th Cir. 2001.)

## I. Plaintiff's Complaint must be dismissed for failure to exhaust administrative remedies.

Plaintiff failed to properly complete the grievance procedure and obtain a ruling on the merits of his grievance before filing this lawsuit on March 10, 2016. (Doc. 1) Accordingly, Plaintiff's instant lawsuit must be dismissed because he failed to exhaust his administrative remedies *prior* to filing suit and Plaintiff is now foreclosed from availing himself of these administrative remedies.

Pursuant to §42 U.S.C. 1997e, "no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted "all administrative remedies as are available." This requirement is mandatory. Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir. 1998); Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999) (filing an untimely grievance does not satisfy the exhaustion of administrative remedies requirement). The exhaustion requirement is necessary to allow completion of the grievance procedure, to assist with developing a record, to provide the agency an opportunity to use its expertise, to provide the agency an opportunity to correct its errors, and to assure that inmates completely exercise the remedies provided to them before seeking federal relief. Alexander, 159 F.3d at 1327 (citing Kobleur v. Group Hospitalization & Medical Services, Inc., 954 F.2d 705, 712 (11th Cir. 1992)).; Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (incarcerated state prisoners must comply with the inmate grievance procedures before filing a federal lawsuit under ' 1983). Because Congress has specifically mandated exhaustion as a "pre-condition to suit," the courts may not waive this requirement. Alexander, 159 F.3d at 1326; Booth v. Churner, 532 U.S. 731, 739 (2001). In Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983 (2002), the United States Supreme Court held that 42 U.S.C. ' 1997e(a) applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

"The PLRA exhaustion requirement requires *full and proper exhaustion*." See Woodford v. Ngo, 548 U.S. 81, 90, 126 S. Ct. 2378 (2006) (emphasis added). Completion of

the exhaustion requirement means properly completing each step of the prison=s grievance procedures in a timely matter as set forth in the rules and obtaining a response on the merits of the claim. Jones v. Bock, 549 U.S. 199, 219 (2007); Johnson v. Meadows, 418 F.3d 1152, 1158 (11th Cir. 2005)("a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating"). Where the claim is not timely raised within the initial time period for starting the grievance procedure and at each intervening step until completion of the procedure, the claim is forever barred. See R. 33-103.014, Fla. Admin. Code (explaining late filed grievances and appeals are properly returned for being filed untimely)

The exhaustion requirement is specifically noted on the Civil Rights Complaint Form and informs the Plaintiff that Plaintiff must complete the grievance procedure prior to initiating this lawsuit. (Doc. 1 §III) When a state provides a grievance procedure for its prisoners, inmates are obligated to exhaust the remedies available under that procedure before pursuing a §1983 lawsuit. Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir.2000) To exhaust a claim of a staff member's misconduct, the inmate must either: (1) grieve the claim under a general three-step sequential process or, (2) for grievances of reprisal, the inmate may file a direct grievance with the warden's office or the Office of the Secretary. Under the three-step procedure, an inmate must first file an informal grievance.[2] See Fla. Admin. Code R. 33-

[2] To submit an informal grievance, the inmate must use the Form DC6-236, Inmate Request. See R. 33-103.005(2)(b), Fla. Adm. Code. If the inmate wishes it to be considered as an informal grievance, and not as a request for information, On top of the page, or on the same line as the word "Request", or on the first line of

103.005 If the issue is not resolved to the inmate's satisfaction, the inmate must then file a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the FDOC. See Fla. Admin. Code R. 33-103.007. Alternatively, a grievance of reprisal may be filed directly with the warden's office or directly with the Office of the Secretary. See Fla. Admin. Code R. 33-103.006(3); Fla. Admin. Code R. 33-103.007(6)(a).

The general three-step procedure takes 110 days (20 + 10 + 15 + 20 + 15 + 30) to complete. The informal grievance must be received within 20 calendar days of when the incident or action being grieved occurred. See Fla. Admim. Code R. 33-103.011(1)(a) The response to the informal grievance is to be completed within 10 calendar days of receipt of the grievance. See Fla. Admin. Code R. 33-103.011(3)(a). The formal grievance must be received within 15 calendar days from the date on the response to the informal grievance. See Fla. Admim. Code R. 33-103.011(1)(b)(1). The response to the formal grievance is to be completed within 20 calendar days of receipt of the grievance. See Fla. Admin. Code R. 33-103.011(3)(b). The administrative appeal must be received within 15 calendar days from the date on the response to the formal grievance. See Fla. Admim. Code R. 33-103.011(1)(c).

---

the request section the inmate shall print the words "Informal Grievance". **Failure to do this will cause the request to be handled routinely and it will not be considered an informal grievance. This will also cause the form to be unacceptable as documentation of having met the informal step if it is attached to a formal grievance submitted at the next step.**" See R. 33-103.005(2)(b), Fla. Adm. Code. [emphasis added]

The response to the administrative appeal is to be completed within 30 calendar days of receipt of the appeal. See Fla. Admin. Code R. 33-103.011(3)(c). Further, grievances of reprisal must be received and are responded to within the same timeframes as an administrative appeal. See Fla. Admin. Code R. 33-103.007(6)(c). As such, the grievance of reprisal must be received within 15 calendar days from the date on which the incident being grieved occurred and responded to within 30 calendar days from the date of the receipt of the grievance. See Fla. Admin. Code R. 33-103.011(1)(d) and 33-103.011(3)(c)

The affidavits and the appeals grievance log attached to this motion evidence that Plaintiff failed to follow the grievance process. [Ex. D-1] Plaintiff filed a grievance which is attached to his initial complaint in January 2016, three years after the incident, wherein he alleges that Defendant Perry sexually harassed him in November 2014 and early February 2015. [Id.] Plaintiff knows that an allegation of sexual abuse will be reviewed by the Department because it is a sensitive issue. Because Plaintiff had not exhausted his remedies regarding any claim of physical abuse on November 2013, Plaintiff includes the facts of the incident that actually occurred in November 2013, in the grievance towards the bottom of the page to include review of his allegations. [Id.] However, this incident occurred in 2013, and not 2014 or 2015.

In his initial complaint Plaintiff relies on the grievance that he filed in January 2016. In his fifth amended complaint, after discussions with counsel regarding his lack of compliance with the requirement that he exhausts his administrative remedies, Plaintiff alleges that (1)

could not exhaust his administrative remedies at Suwannee CI, and (2) filed a grievance at Union CI and the warden approved approve the grievance. (Doc. 59, p 20 ¶23). No such grievance exists. [Ex. D-2.] Plaintiffs records were searched and indicate that he filed no such grievance. [Id.]. This is a claim not made in Plaintiff's initial complaint. See (Doc. 1). In any event, Plaintiff failed to exhaust his administrative remedies for an incident that occurred on November 20, 2013. Plaintiff did make allegations of inappropriate sexual behavior from Defendant Perry, the use of force of September 8, 2013. [Exs. I, M]. Plaintiff did not file grievances regarding: inappropriate sexual behavior that allegedly occurred on November 19, 2013, the use of force which occurred on November 20, 2013, failure to protect on November 2013, nor retaliation.

In his Fifth Amended Complaint, Plaintiff alleges that he exhausted and attaches the same grievance; however, Plaintiff scratched off the dates that he used to seek review of his sexual harassment allegations, which were Nov. 2016 and February 2015. (Doc. 1p,5). The fact that Plaintiff seeks to remove the dates from his grievance is telling in that Plaintiff knows that he did exhaust his administrative remedies regarding this claim, an incident that allegedly occurred in Nov. 2013. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 541 U.S. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones 549 U.S. at 218, 127 S.Ct. at 166.

## II. Plaintiff's Eighth Amendment Excessive Force Claim

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment and violates the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986). To prove excessive force, a Plaintiff must prove that "force was applied ... maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320–21. Under this standard, "whether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987). An inmate would have to demonstrate an Eighth Amendment excessive force claim in both a subjective and objective manner. Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act with a sufficiently culpable state of mind," and with respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Id. An Eighth Amendment excessive force claim would not include the use of force employed in a custodial setting that was done to maintain or restore discipline or order and not done "maliciously and sadistically to cause harm." Id.; Skritch v. Thornton, 280 F.3d 1295, 1300 (11th Cir.2002) (citing Whitley v. Albers, 475 U.S. at 320-21).

The use of force was necessary in this case to seek compliance with an order and to restore order. [Exs. A, B, F, H, G]. "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before

responding." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990). To determine whether the force used by a prison official amounts to a constitutional violation, "the core judicial inquiry is ... whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. at 7. Defendant Perry used force to hold on to the tether who Plaintiff made allegations regarding self-harm and used force a second time when Plaintiff became physically resistant to being escorted. [Exs. A, B, F , H , G ]. The force used against Plaintiff was due to insure his safety and the safety of staff Fla. Admin. Code R 33-602.210. (Ex. F) When Plaintiff became compliant, all force ceased. [Exs. A, B, F , H , G ]. Plaintiff was injured as a result. [Ex. K]

Plaintiff's behavior was the cause of the injuries he received during this use of force. Defendants acted in response to Plaintiff's behavior. Plaintiff's actions posed a serious threat to the security of the institution as he threatened to cause self-harm and physically resisted Defendant Perry. [Id.] In response to this threat, only the minimal amount of force necessary to gain control of Plaintiff was applied, in a good-faith effort to restore order. (Id.) Plaintiff did not have the right to threaten self-harm nor physically resist being escorted. Plaintiff did not file grievances regarding the incident until three years, later. Plaintiff pled no contest to the allegations that he failed to obey an order. [Ex. H]. Plaintiff exaggerates that he was being escorted with a dog leash, he misstates the facts of what occurred; has confused when the incidents occurred, and received a disciplinary report for failing to obey orders, to which he pled no contest. [Exs. F, G, H, I, J]. Defendants Fogell and Markham were not involved in

the November 20, 2013, incident for which Plaintiff complains of in this complaint. Additionally, Plaintiff injuries are inconsistent with someone who was beaten, hit or kicked, while being restrained. [Ex. K].

In viewing the evidence in the light most favorable to Plaintiff, no reasonable finder of fact could determine that Defendant acted maliciously and sadistically. Plaintiff cannot put forth has forth specific, nonconclusory factual allegations that establish improper motive causing cognizable injury. See Crawford–Elv. Britton, 523 U.S. 574, 598 (1998). Nor is there any evidence that the force used was not applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Plaintiff cannot establish both a subjective and objective component. Id. at 8; Johnson v. Moody, 206 F. App'x 880, 883 (11th Cir. 2006). Plaintiff cannot prove that the Defendant acted "with a sufficiently culpable state of mind." Id. Because Plaintiff cannot demonstrate that Defendant Perry acted with an unconstitutional motive or state of mind, a reasonable jury would have to conclude that force was reasonable under the circumstances. Defendant Markham was not involved in the use of force and neither was Defendant Fogell. Therefore, summary judgment in the Defendants' favor should be granted regarding this claim.

III. Plaintiff's claim for retaliation fails.

An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were "the result of [the inmate's] having filed a grievance

concerning the conditions of his imprisonment." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). A prisoner must demonstrate that the prisoner is being retaliated against for exercising his right to free speech. Id. To prevail on a retaliation claim, the inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Farrow, 320 F.3d at 1248).

Additionally, a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction. "[N]o claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform." O'Bryant v. Finch, 637 F.3d 1207, 1215-16 (11th Cir.2011). The record here shows that there certainly was 'some evidence' that Plaintiff actually committed a rule violation. Furthermore, Plaintiff pled no contest to the rule violation. Because Plaintiff pled no contest to the disciplinary charges resulting in the disciplinary harm at issue here, his retaliation claim fails. A '"no contest" shall is handled as a guilty plea. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974) "Prison disciplinary proceedings are not a part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." (Id.); Banks v. McNeil, 2009 WL 3112095, at *3 (M.D. Fla. Sept. 25, 2009). Plaintiff's plea demonstrates

that the causal connection between the Plaintiff's protected activity and the adverse action is severed. O' Bryant, 637 F.3d at 1215–16.

Plaintiff's retaliation claim fails because Plaintiff has done nothing in his second fifth amended complaint but allege that the actions that took Defendant Perry took were in retaliation to Plaintiff filing a sexual harassment complaint. Plaintiff plead no contest to the DR he received on November 20, 2013, and Plaintiff cannot claim the actions were in retaliation for him making a sexual harassment complaint against Defendant Perry. Additionally, the attached sexual harassment complaints make its abundantly clear that Plaintiff files sexual harassment complaints following the receipt of disciplinary reports or after a use of force. [Ex. M[3]]. Plaintiff's claim of retaliation against Defendant Perry must be dismissed.

## IV. Failure to protect

Plaintiff alleges that Defendant Fogell was involved in a use of force against him. (Doc. 59. p 21 ¶ 24). In fact, Plaintiff alleges that Defendant Perry, Markham, and Fogell dragged Plaintiff to the cell and force was used against him. (Id.) Defendant Markham was not involved in the use of force. [Exs. F, G]. Defendant Fogell observed the use of force; however, was not involved in it. [Exs. B, F, G]. Plaintiff has pled to failing to obey an order.

[3] Plaintiff made several complaints of sexual harassment while at Suwannee CI, to include allegations against individuals that were not employed at the institution. The allegations of sexual harassment are usually made the at time of a disciplinary report being written or actions taken against Plaintiff. [Exs. L, M; Middle District of Florida Case No. Case No. 3:15-cv-827- BJD-PDB]

[Ex. H]. If Defendant Fogell is watching Plaintiff disobey and order and Defendant Perry is using force to bring Plaintiff into compliance, Plaintiff cannot prove a claim of failure to protect.

To prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings, first, he must demonstrate that he was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Second, he must show that the defendant prison official had a "culpable state of mind in that he knew of and disregarded "an excessive risk to inmate health or safety." Id. In other words, the defendant must both be aware of fact(s) from which the inference could be drawn that a substantial risk of serious harm exists and most importantly, he must also draw the inference. Farmer, 511 U.S. at 837. Simple negligence is not actionable under § 1983, and a plaintiff must allege a "conscious or callous indifferent to a prisoner's rights." Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982).

Essentially, despite his claims, Plaintiff cannot prove that anyone failed to protect him. As stated above in this section above, Plaintiff cannot demonstrate that Defendant Markham who was involved and Defendant Fogell, who was present, was made aware of any facts that would indicate or made aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and most importantly, that they drew the inference. Therefore, summary judgment should be granted in their favor.

V. Sexual Harassment and threats of violence

To the extent Plaintiff alleges that he was sexually harassed by Defendant Perry, first, the claim is not credible because as mentioned above, Plaintiff makes unfounded claims if sexual harassment in response to receiving disciplinary reports. [Ex.M]. Plaintiff makes allegations against individuals not employed by the institution. [Id.] Second, the Eleventh Circuit has recognized that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment. Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir.2006.) Also, Plaintiff's claim that he has been treated in a cruel manner and subjected to sexual harassment and threats of violence does not state a constitutional claim. It is well established that mere harassment or verbal abuse does not rise to the level of a constitutional violation. See Edwards v. Gilbert, 867 F.2d 1271, 1274 n. 1 (11th Cir.1989) (noting that verbal taunts, alone, are insufficient to state a constitutional violation); Hernandez v. Florida Dep't of Corrections, 281 F. App'x 862, 866 (11th Cir.2008) (holding that plaintiff's allegations of verbal abuse and threats by prison officials did not state a constitutional claim because the defendants never carried out the threats, and "verbal abuse alone is insufficient to state a constitutional claim"); Allen v. Stevens, 2012 WL 4510866, at *2 (N.D. Fla. Sept. 10, 2012), report and recommendation adopted, 2012 WL 4510961 (N.D. Fla. Oct. 1, 2012).

Here, Plaintiff's allegation that Defendant Perry made sexual comments to me would not satisfy the Eighth Amendment standard. See, e.g., Boxer X, 437 F.3d at 1111 (female prison guard's alleged solicitation of a male prisoner's manual masturbation, even under the threat of

reprisal, did not present more than de minimis injury, and therefore did not give rise to a claim -- 0under the Eighth Amendment); Boddie v. Schnieder, 105 F.3d 857, 61 (2d Cir.1997) (a few incidents involving verbal harassment, touching, and pressing without consent are not sufficiently serious to establish Eighth Amendment violation); Jones v. Culinary Manager II, 30 F.Supp.2d 491, 493, 497–98 (E.D.Pa.1998) (allegation that guard pinned plaintiff to box, ground his pelvis against plaintiff's buttocks, and threatened sex was not sufficiently serious to be an Eighth Amendment violation); Bonner v. Hall, 2012 WL 5357275, at *3 (N.D.Fla. Oct. 1, 2012) (allegations that correctional officer asked to see inmate's penis, followed by the officer's licking his lips, does not indicate anything more than a de minimis injury and thus fails to state a constitutional claim), Report and Recommendation Adopted by 2012 WL 5357188 (N.D.Fla. Oct. 30, 2012); Allen v. McDonough, 2011 WL 4102525, at *5–6 (N.D.Fla. Aug. 17, 2011)(officer's making sexual comments and gesture to inmate during inmate's shower did not rise to the level of an Eighth Amendment violation). Therefore, Plaintiff's claim should be dismissed.

## VI. To the extent Plaintiff sues the Defendants in their official capacity for damages, Defendants are immune from suit.

A suit against a state employee in an official capacity is a suit against the State for Eleventh Amendment purposes. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). In the absence of any waiver or express congressional authorization, which is not present in this case, the Eleventh Amendment prohibits a suit against a state in federal court. Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985). Congress did not intend to abrogate a state's Eleventh Amendment immunity in § 1983 damage suits. Cross v. State of Ala., State Dep't of

Mental Health & Mental Retardation, 49 F.3d 1490 (11th Cir. 1995). Florida has not waived its sovereign immunity nor consented to be sued in damage suits brought pursuant to section 1983. See Gamble v. Florida Dep't of Health & Rehabilitative Servs., 779 F.2d 1509, 1513 (11th Cir. 1986). Florida has not waived its Eleventh Amendment immunity from suit in federal court. Fla. Stat. § 768.28(18). Therefore, to the extent that Plaintiff may be attempting to sue Defendant in their official capacity for damages, the Complaint must be dismissed.

## VII. The Defendants are entitled to qualified immunity.

"The defense of qualified immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation." GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998) overruled on other grounds. Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct "violates 'clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" Id. (alteration in original) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Supreme Court has established a two-part test for determine ng whether an officer is entitled to qualified immunity. The court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citation omitted). The court must also determine whether the constitutional

violation was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001). However, the district court has discretion to determine in what order to address each part. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

To show that the constitutional violation was clearly established, plaintiff must demonstrate (1) "that a materially similar case has already been decided, giving notice to the [correctional staff];" (2) "that a broader, clearly established principle should control the novel facts in this situation;" or (3) "this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005) (citations omitted). The Plaintiff "must point to law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida" to show that the constitutional violation was clearly established. Id.

Under Florida law a correctional officer is entitled to apply physical force upon an inmate to obtain compliance with a lawful order. See also Fla. Admin. Code R. 33-602.210(2). The Eleventh Circuit has said that "[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir.2008)(quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir.1990)). "[P]rison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly, they are not required to do so where an inmate repeatedly fails to follow those orders." Danley v. Allen, 540 F.3d at 1307. "An officer always has the right and duty to

use such reasonable force as is necessary under the circumstances to maintain order and assure compliance with prison regulations." Johnson v. Breeden, 280 F.3d 1308, 1317 (11th Cir. 2002). Therefore, Defendants are entitled to qualified immunity.

## CONCLUSION

Wherefore, Defendants request that, due the arguments and case law presented above, the Court enter an order granting Defendants' Motion for Summary Judgment.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL

/s/Shirley Wilson Durham
Senior Assistant Attorney General
Assistant Attorney General
Florida Bar No.: 0993204
Office of the Attorney General
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300 – Telephone
(850) 488-4872 – Facsimile

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to: Gerald Gipson, DC #B00406, Suwannee CI, 5964 U.S. Highway 90, Live Oak, Florida 32060, on this 28th day of February 2018.

/s/Shirley Wilson Durham
Shirley Wilson Durham
Senior Assistant Attorney General

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JERALD GIPSON,
DC #B00406
Plaintiff,

Case No. 3:16-cv-236- MMH-MCR

v.

SERGEANT MARKHAM, et al.
Defendants.
_____________________________/

INDEX INTO EXHIBITS

| | | | |
|---|---|---|---|
| 1. | Exhibit A | - | Declaration of Defendant Perry |
| 2. | Exhibit B | - | Declaration of Defendant Fogell |
| 3. | Exhibit C | - | Defendant of Defendant Markham |
| 4 | Exhibit D | - | D1 Appeal log |
| | | | D2 Affidavits |
| 5. | Exhibit E | - | Plaintiff's grievances and appeals |
| 6. | Exhibit F | - | Use of Force Report |
| 7. | Exhibit G | - | Mins report regarding use of force of 11/20/13. |
| 8. | Exhibit H | - | DR for disobeying an order |
| 9. | Exhibit I | - | Use of force from 9/8/2013 |
| 10. | Exhibit J | - | Mins from use of force of 9/9/2013 |

11. Exhibit K - Plaintiff's medical records.
12. Exhibit L - MINS regarding sexual harassment
13. Exhibit M - Sexual harassment complaints
14. Exhibit N - Suwannee CI Work Schedule

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL

/S/Shirley Wilson Durham
Senior Assistant Attorney General
Senior Assistant Attorney General
Florida Bar No.: 00993204
Office of the Attorney General
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300 – Telephone
(850) 488-4872 – Facsimile

CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. mail to: Jerald Gipson, DC# B00406, DC #B00406, Suwannee CI, 5964 U.S. Highway 90, Live Oak, Florida 32060, on this 27th day of February 2018.

/S/Shirley Wilson Durham
Shirley Wilson Durham
Senior Assistant Attorney General