UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JERALD GIPSON,

    Plaintiff,

vs.

SERGEANT C. MARKHAM, et al.,

    Defendants.

Case No. 3:16-cv-236-J-34MCR

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, JERALD GIPSON, and responds to Defendants' Motion for Summary Judgment, and would show:

1. Defendants seek summary judgment on the following grounds:

   a. Plaintiff failed to exhaust his administrative remedies;

   b. Plaintiff failed to state a claim for relief;

   c. Defendants are entitled to Eleventh Amendment immunity.

2. Plaintiff responds as follows:

   a. Plaintiff responds that he did, in fact, file a grievance at the time (the grievance Perry complained of) and also re-filed at the institutional level at Union C.I. in 2016, and was approved. At the time, Gipson believed the incident had happened in November 2014 or possibly early 2015. The response indicated that an investigation was opened. (Doc. 1-1).

b. Plaintiff has stated a claim for relief in that he describes first-hand the experience of being abused first by his arms being pulled into the food slot by officers with a tether attached to his handcuffs, and then by being thrown on his head by Defendant Perry and kicked, stomped, and punched for a sustained period, without a valid penological purpose, while the other Defendants watched and failed to intervene.

c. Plaintiff concedes that Defendants are properly sued in their individual, not official, capacities and asks that the Court grant a liberal construction to his pro se pleadings to the effect that Plaintiff intends to sue Defendants as individuals under 42 U.S.C. 1983.

## PLAINTIFF'S STATEMENT OF DISPUTED AND ADDITIONAL FACTS

Plaintiff generally denies the allegations of fact cited by the Defendants and submits the following disputed and additional facts, as follows:

1. On November 19, 2013,[1] Officer Freddie Perry, while doing cell checks, stopped at Plaintiff's cell and told Gipson that he liked him, that Gipson was sexy and good-looking. Perry grabbed his own penis several times and told Gipson he wanted to "sleep with" him. (Doc. 59, 5th Am. Complaint, ¶ 4).

---

[1] In his original complaint on March 8, 2016, Gipson was not sure of the date and thought it might have happened in 2014, or even early 2015. (Doc. 1, Original Complaint, page 5).

2. On his next round, about 30 minutes later, Perry asked Gipson why he (Gipson) was always watching him. Perry told Gipson he loved him. Gipson responded that he wasn't gay and asked Perry to leave him alone. Perry persisted with sexual references, continuing to grab his own penis. (Id. ¶ 5).

3. The next day, while Gipson and inmate witnesses Kendall Wilkes, Harbor,[2] and other inmates were getting showers, shaves, and haircuts, Perry entered the quad. Gipson asked Officers Markham and Fogle to put him back in his cell. Perry threatened to "beat Gipson to sleep" and asked why Gipson grieved him to the Inspector for making sexual comments. (Id., ¶ 6, 7).

4. Perry told Gipson he was going to "beat Gipson's ass" and "put him on his head." Perry then told Gipson to cuff up. Gipson asked Defendants Fogle and Markham to cuff him up and take him to his cell. But they would not do so and they let Perry to cuff Gipson up. (Id., ¶ 7).

5. Gipson was escorted back to his cell with a tether ("dog leash") attached to his cuffs. Perry had Gipson's arm "jacked up" with force. After Gipson entered his cell, the tether attached to the cuffs was threaded through the

---

[2] Witness inmate Harbor might be Clint Harbor, aka Clint Mottesheard, now at Century C.I.

food slot and Perry, Markham, and Fogle, "snatched" on the tether, pulling Gipson's arms through the slot, slamming the flap on them. (Id., ¶ 8).[3]

6. At this point, Gipson's arms were bleeding. A hand-held camera was brought to the scene, turned on, and then turned off again. (Id., ¶¶ 8, 9).

7. Thirty minutes later, Officer Perry returned to Gipson's cell door and told Gipson to cuff up "or it will be worse." Defendants Jeremy Pittman and B. Bryant, were present, watching everything. Pittman and Bryant were at the cell door as Gipson was placed in full body restraints, cuffs, black box, waist chain, and leg shackles. No supervisor was present. (Id., ¶ 10, 11).

8. Defendant Perry escorted Gipson out of Quad 3 into the Sally port by himself, past a row of inmate witnesses at their cell doors. Perry then lifted Gipson off his feet and repeatedly punched, stomped, and kicked Gipson in the back, ribs, knees, and head, breaking his jaw and causing numerous other injuries, while officers Pittman and Bryant watched. (Id., ¶ 12).

9. Plaintiff Gipson was then placed in a cell without property and was not taken immediately for medical evaluation and treatment until days later. Gipson was told that his jaw was broken and received treatment. He also received injuries to both knee caps and his body and both arms, as a result of his arms

---

[3] Another inmate, Charles Davis, DC# Q00394, had this same procedure done to him at Suwannee C.I. a year earlier. There exists a series of still photos showing a heavy-set corrections officer pulling on the tether coming out of the food slot like a Volga Boatman.

      being pulled through the food slot and slammed by the flap, and he has suffered blackouts and dizziness as a result of the unnecessary force used.

10. The injury to his jaw required the dentist to wire the jaw and to treat the four teeth that were knocked loose by the blow to his jaw. (See Doc. 7-1, p. 4).

11. Plaintiff was kept in fear for the rest of the time he was at Suwannee C.I. In October of 2015, he was moved to Union Correctional Institution. Plaintiff very quickly thereafter gave statements about what had happened to him at Suwannee C.I. On January 29, 2016, he filed a grievance about the sexual predations of Officer Freddie Perry and the resulting injuries to his hand, arms, and jaw. Plaintiff wrongly recalled the incident having happened in November of 2014, rather than 2013. The grievance was approved at the institutional level and an Office of the Inspector General investigation was started so that Plaintiff fully exhausted the grievance process at that point. (See Doc. 1-1, pp. 1-2 and Doc. 7-1, pp. 1-2).

## MEMORANDUM OF LAW

Summary judgment is appropriate when the pleadings and the evidence demonstrate "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant may support its motion by identifying those portions of "discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *see Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

### A. Plaintiff Has Exhausted His Administrative Remedies

Plaintiff has produced a grievance setting out the facts of this case (although apparently having incorrectly stated the date it occurred). The grievance was approved at the institutional level, stating that an investigation had been started by the Office of the Inspector General. This was done even though the date of the grievance was long after the stated date of the action grieved. The Reviewing Authority may "approve, deny, or return the grievance and the reasons for approval, denial, or return. FAC 33-103.002(16)

A grievance that is not granted or denied on the merits is returned to the filer without action. "A grievance may be returned to the inmate for any one or more of the reasons stated in Rule 33-103.014, F.A.C., without further processing." FAC 33-103.007(4). Among the reasons a grievance may be returned without processing is that it was not received within a certain time after the date that the incident being grieved occurred. FAC 33-103.014(h). To be considered, a grievance filed outside the specified time limits must satisfy the Reviewing Authority that it was not feasible to file within the relevant time periods despite a good faith effort. FAC 33-

103.007(6)(a)2. The Reviewing Authority has an undefined discretion to reject the grievance or to accept it and treat it as timely filed.[4]

As noted in the grievance response (Doc. 1-1, p. 2), the reviewing authority did not return the grievance pursuant to FAC 33-103.014, but rather chose to "approve" the grievance and gave as a reason the fact that the matter was being reviewed by the investigative section of the Office of the Inspector General.

In any case, the reviewing authority chose to treat the late grievance as timely filed and did not return the grievance but rather forwarded it to the Office of the Inspector General. *Bolton v. U.S.*, 347 F.Supp.2d 1218, 1221 (N.D. Fla. 2004 (Grievance process exhausted when requested relief was granted).

There have been many cases noting that prison officials cannot rely on a prisoner's defects in compliance with the rules if they responded to the grievance rather than throwing it out based on that noncompliance. *See Lee v. Smith*, 2010 WL 114876, *3 (S.D.Ga., Jan. 12, 2010) (declining to dismiss where plaintiff's grievance was decided on the merits at the first level and no procedural defects on appeal authorized rejection); *Subil v. U.S. Marshal*, 2008 WL 835712, *5

---

[4] Defendants to cite the Eleventh Circuit's *Johnson v. Meadows*, 418 F.3d 1152 (2005) (dealing with Georgia grievance rules) and the U.S. Supreme Court's *Woodford v. Ngo*, 548 U.S. 91, 126 S.Ct. 2378 (2006) (dealing with California grievance rules) to the effect that there can be no valid excuse for failure to timely-file a grievance. The cases merely hold that the. grievance rules must be followed. In those cases, and in *Harper v. Jenkin*, 179 F.3d 1311 (11th Cir. 1999), the grievances were rejected as untimely. In the case at bar, the Reviewing Authority exercised its discretion to accept and process Plaintiff's grievance instead of returning it without action.

(N.D.Ind., Mar. 24, 2008) (declining to dismiss for non-exhaustion where grievance was not filed in the normal channels, but the final reviewing authority accepted and responded to it); *Thompson v. Correctional Medical Services, Inc.*, 2008 WL 704229, *2 (E.D.Mich., Mar. 14, 2008) (Where medical grievance was accepted and addressed on its merits and not rejected as untimely, grievance process could not be deemed unexhausted); *Baker v. Vanderark*, 2007 WL 3244075, *7-8 (W.D.Mich., Nov. 1, 2007) (citing the *Woodford v. Ngo,* 548 U.S. 91, 126 S.Ct. 2378 (2006) concept of "proper exhaustion" as requiring officials to raise procedural defects timely); *Riley v. Hawaii Dep't of Public Safety*, 2007 WL 3072777, *4-6 (D.Haw., Oct. 17, 2007) (holding prisoners complaining of sexual assault who completed the emergency grievance procedure as instructed, and whose complaints were processed through it, had exhausted despite not also completing the standard grievance process); *Kretchmar v. Beard*, 2006 WL 2038687, *5 (E.D.Pa., July 18, 2006) ("When the merits of a prisoner's claim have been fully examined and ruled upon by the ultimate administrative authority, prison officials can no longer assert the defense of failure to exhaust, even if the inmate did not follow proper administrative procedure."); *Jones v. Stewart*, 45 7 F. Supp. 2d 1131, 1134-3 7 (D. Nev., 2006 (arguing that *Woodford* sets out a "merits test" – did the agency address the merits up to the highest level? and a "compliance test" – did the plaintiff follow the rules? and proper exhaustion is satisfied by

compliance with either); *Accord, Cohen v. Baca*, 2007 WL 1575245, *5 (D.Nev., May 30, 2007).

## B. That Plaintiff's Grievance Showed the Wrong Date Is Not Fatal

Plaintiff made at least one significant error in his grievance narrative – he got the date wrong. More than two years had passed and his recollection was faulty. A grievant must "provide as much relevant information as he reasonably can in the administrative grievance process. . . it does not require that he do more than that." *Brown v. Sikes* 212 F.3d 1205, 1207 (11th Cir. 2000). *Brown v. Sikes* continues, "But a prisoner cannot provide that which he does not have; he cannot identify those whose identities are unknown to him. Pegging our thinking to the words of the statute, a grievance procedure that requires a prisoner to provide information he does not have and cannot reasonably obtain is not a remedy that is 'available' to the prisoner." *Id*. At 1208.

Cases from other jurisdictions agree: A grievance "need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."); *Kikumura v. Osagie*, 461 F. 3d 1269, 1283 (10th Cir. 2006); *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004); *Milan v.* Chen, 2008 WL 2229215, *5 (C.D.Cal., Feb. 5, 2008), report and recommendation adopted, 2008 WL 2116930 (C.D. Cal., May 14, 2008) and 2008

WL 2116959 (C.D.Cal., May 14, 2008); *see Wine v. Pollard*, 2008 WL 4379236, \*3 (W.D.Wis., Sept. 23, 2008) (requiring prisoners to identify every possible legal theory in a grievance "would be unfair and possibly invalid"); *Jones 'El v. Berge*, 172 F. Supp. 2d 1128, 1134 (W.D.Wis. 2001) (holding that once a claim is exhausted, "[a]ny claim for relief that is within the scope of the pleadings" may be litigated without further exhaustion).

It is important to keep in mind that if the reviewing authority had rejected Gipson's grievance and returned it without action under FAC 33-103.114, Gipson could have pursued other options. The U.S. Supreme Court in *Woodford v. Ngo*, 548 U.S. 91, 126 S.Ct. 2378 (2006), did not rule on the possibility that prisons might "create procedural requirements for the purpose of tripping up all but the most skillful prisoners" (and Gipson was far from that), since the case did not present that situation, but the Court clearly recognized that potential. *Id*. at 102. This is a concern that has been expressed by numerous courts. *See, e.g., Hooks v. Rich*, 2006 WL 565909, \*5 (S.D. Ga., Mar. 7, 2006) ("The exhaustion requirement is a gatekeeper, not a 'gotcha' meant to trap unsophisticated prisoners who must navigate the administrative process pro se."); *LaFauci v. N.H. Dep't of Corr.,* 2005 WL 419691, \*14 (D.N.H., Feb. 23, 2005) ("While proper compliance with the grievance system makes sound administrative sense, the procedures themselves,

and the directions given to inmates seeking to follow those procedures, should not be traps designed to hamstring legitimate grievances.").

### C. Plaintiff States A Claim for Violation of the Eighth Amendment

Plaintiff's account of what happened to him at the hands of the Defendants is irreconcilably at odds with the version told by the Defendants. Because Plaintiff's Fifth Amended Complaint, and the prior complaints, are sworn under penalty of perjury, they constitute affidavits for purposes of the Summary Judgment rule. Plaintiff mentions a number of inmate witnesses who saw the events. Plaintiff was only able to secure the affidavit of one of them, Shawn Springer (Exhibit A), attached hereto. However Springer clearly agrees that Perry slammed Gipson to the floor and beat him while he was in full restraints. (Id.).

Plaintiff concedes that the sexual harassment by Perry does not make out a case for a compensable injury under the Prison Litigation Reform Act. However, the critical contribution of Plaintiff's outline of those events is that it creates the motivation for the events that follow. Officer Perry makes sexual advances to Gipson and is not only rebuffed, but Gipson complains to the Inspector and Perry is made aware of the complaint. The next day, Perry is out for revenge.

The gratuitous violence against Gipson does, however, make out an actionable violation of the Eighth Amendment. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment and violates the Eighth

Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Whether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987). The allegations made by Plaintiff satisfy the requirement of *Hudson v. McMillian*, 503 U.S. 1, 8 (1992), that the "officials act with a sufficiently culpable state of mind."

### D. Defendants Are Not Entitled to Qualified Immunity

A defendant is not entitled to qualified immunity where the plaintiff's allegations, if true, establish a constitutional violation and the right at issue was clearly established at the time of the defendant's actions. *See Hope v. Peltzer,* 536 U.S. 730 (2002), citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Additionally, government officials acting within their discretionary authority are ineligible for qualified immunity from suit when the facts "[t]aken in the light most favorable to the party asserting the injury ... show the officer's conduct violated a constitutional right" and "the right was clearly established." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

Further, in 2002, the Eleventh Circuit held that "[in] this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to

cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton,* 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillan,* 503 U.S. 1, 6-7 (1992) and *Whitley v. Albers,* 475 U.S. 312, 319 (1986).   The *Skrtich* rule obviates Defendant's defense of qualified immunity to Plaintiff's well-pled claims about the retaliation and excessive force used against him.  Further, *Skrtich* indicates that the defense of qualified immunity is not available to Defendant Perry, since he maliciously and sadistically harassed and abused Gipson without any justification.

When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow v. Fitgerald*, 457 U.S. 800, 814 (1982).  The argument that Defendants are entitled to qualified immunity in this case is reaching too far at best.

### E. Plaintiff Seeks Relief under Rule 56(d)

Plaintiff has not had a chance to engage in meaningful discovery. Plaintiff sent Defendants discovery requests, Exhibit B, which were never responded to and essentially ignored. Plaintiff has named several witnesses to the events he suffered but has not had a chance to depose them. Use of Force reports presented as exhibits by the Defendants refer to both fixed and hand-held video recordings that Plaintiff has never had a chance to see. Plaintiff notes that, according to Department of Corrections listings, Officer Jeremy Pittman continues to work at Suwannee

Correctional Institution but somehow was never served. Plaintiff wishes to access information about the circumstances of the termination of Officer Freddie Perry from the employ of the Florida Department of Corrections.

Summary Judgment motions made prior to the completion of discovery are usually premature and hence disfavored. *See, e.g., Americable Int'l Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C.Cir.1997); *Tabb v. District of Columbia*, 477 F.Supp.2d 185, 188 n. 1 (D.D.C.2007); *Iacangelo v. Georgetown Univ.*, Civil Action No. 05–2086, 2007 WL 915224, at *3 (D.D.C. Mar. 26, 2007). *Bourbeau v. Jonathan Woodner Co.*, 600 F. Supp. 2d 1, 3 (D.D.C. 2009); *see also Celotex*, 477 U.S. at 322, 106 S.Ct. 2548 (summary judgment is normally appropriate after "adequate time for discovery"); *Tabb v. District of Columbia*, 477 F.Supp.2d 185, 188 n. 1 (D.D.C.2007) (noting that a pre-discovery summary judgment motion "usually is a disfavored practice"). Here, the motion for summary judgment was filed prior to the full compliance with discovery requests. The question, then, is whether the record now before the Court is sufficient to warrant summary judgment for the Defendants at this stage in the proceedings. *See Thompson v. Fathom Creative, Inc.*, 626 F. Supp. 2d 48, 53 (D.D.C. 2009).

In order to fully respond to the allegations in the affidavits and other papers of the United States and the other Defendants, Plaintiff needs sufficient time to review all the records that are due. Plaintiff has made a Declaration pursuant to

Fed.R.Civ.P. 56(d). Exhibit C, Declaration of James Cook.

### F. Conclusion

Based on these arguments and citations to authority, Plaintiff asks this Honorable Court to DENY Defendants' Motions for Summary Judgment, permit Plaintiff to undertake a course of meaningful discovery, as follows:

1. Require Defendants to respond to his Discovery Requests;
2. Permit Plaintiff to access the video recordings of the use of force;
3. Permit Plaintiff to access medical reports as to his injuries;
4. Permit Plaintiff to depose the several inmate witnesses he names;
5. Permit Plaintiff to depose the Defendants;
6. Permit Plaintiff to serve Jeremy Pittman, still at Suwannee C.I.;
7. Permit Plaintiff to get a copy of his own deposition.

Respectfully Submitted,

s/James V. Cook_____
JAMES V. COOK
Florida Bar Number 966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
Fax: 850 561-0836

ATTORNEYS FOR PLAINTIFF

I CERTIFY a true copy hereof was served 6/4/18 on all counsel of record registered with the CM/ECF electronic filing system.

/s/James V. Cook